Javier F. Garcia
Washington Bar No. 38259
JGarcia@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000

Stephen F. English
(to be admitted pro hac vice)
SEnglish@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, Oregon
Phone:  (503) 727-2000

Thomas L. Holt
(to be admitted pro hac vice)
THolt@perkinscoie.com
Jeremy L. Buxbaum
(to be admitted pro hac vice)
JBuxbaum@perkinscoie.com
PERKINS COIE LLP
131 South Dearborn Street, Suite No. 1700
Chicago, Illinois 60603
Phone:  (312) 324-8400

*Attorneys for Plaintiffs The Arizona Board of Regents on Behalf of The University of Arizona and Arizona State University, The Regents of The University of California on Behalf of University of California, Berkeley and University of California, Los Angeles, The Regents of The University of Colorado on Behalf of The University of Colorado Boulder, University of Oregon, Oregon State University, The University of Southern California, The Board of Trustees of The*

COMPLAINT–1

1
2
3

*Leland Stanford Jr. University, University of Utah, University of Washington, and Washington State University*

4
5
6
7
8

S. Annie Allison
Washington Bar No. 48397
annie.allison@haynesboone.com
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Phone: (212) 835-4858

9
10
11
12
13
14

David Clark
(to be admitted pro hac vice)
david.clark@haynesboone.com
HAYNES AND BOONE, LLP
600 Anton Blvd., Suite 700
Costa Mesa, CA 92626
Phone: (949) 202-3086

15
16

*Attorneys for Plaintiff University of Southern California*

17
18
19
20
21
22
23
24
25
26

COMPLAINT–2

1
2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

3

THE ARIZONA BOARD OF
REGENTS ON BEHALF OF THE
UNIVERSITY OF ARIZONA AND
ARIZONA STATE UNIVERSITY,
THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA
ON BEHALF OF UNIVERSITY OF
CALIFORNIA, BERKELEY AND
UNIVERSITY OF CALIFORNIA,
LOS ANGELES, THE REGENTS
OF THE UNIVERSITY OF
COLORADO ON BEHALF OF
THE UNIVERSITY OF
COLORADO BOULDER,
UNIVERSITY OF OREGON,
OREGON STATE UNIVERSITY,
THE UNIVERSITY OF
SOUTHERN CALIFORNIA, THE
BOARD OF TRUSTEES OF THE
LELAND STANFORD JR.
UNIVERSITY, UNIVERSITY OF
UTAH, UNIVERSITY OF
WASHINGTON, AND
WASHINGTON STATE
UNIVERSITY,

Case No. 2:21-cv-135

**JURY TRIAL DEMANDED**

4
5
6
7
8
9
10
11
12
13
14
15

Plaintiffs,

16

v.

17
18

SPORTSWEAR INC. d/b/a PREP
SPORTSWEAR and VINTAGE
BRAND, LLC,

19

Defendants.

20
21
22

## **COMPLAINT**

23
24
25
26

Plaintiffs The Arizona Board of Regents on behalf of the University of
Arizona ("University of Arizona" or "Arizona") and Arizona State University
("Arizona State University" or "ASU"), The Regents of the University of California
on behalf of both the University of California, Berkeley ("University of California,
Berkeley" or "Cal") and the University of California, Los Angeles ("University of

COMPLAINT–3

California, Los Angeles" or "UCLA"), The Regents of the University of Colorado on behalf of the University of Colorado Boulder ("University of Colorado Boulder" or "CU"), University of Oregon, Oregon State University, The University of Southern California ("USC"), The Board of Trustees of the Leland Stanford Jr. University ("Stanford University"), University of Utah, University of Washington, and Washington State University (collectively "Plaintiffs"), for their Complaint against Defendants Sportswear Inc. d/b/a Prep Sportswear and Vintage Brand, LLC (collectively "Defendants"), allege as follows:

## NATURE OF THE CASE

The universities that comprise the Pac-12 Conference are some of the most well-known and highly regarded in the country, and indeed the world. Equally well-known are the trademarks and trade dress that symbolize these universities. These names, mascots, logos, and color schemes are known and beloved by alumni and fans who closely associate these symbols with the universities themselves and who purchase apparel and merchandise emblazoned with these symbols to reflect their ongoing support for the associated institutions and their sports teams. It should come as no surprise that the sale of branded college apparel and merchandise is a multi-billion-dollar industry. At the heart of this industry is licensing. The schools selectively license the use of their trademarks to third parties who are authorized to produce, distribute, and sell products bearing those marks to consumers eager to show their school pride and team allegiances. Third parties without a license are not authorized to sell products bearing the universities' marks.

Defendants, however, have willfully ignored these obvious constraints and have knowingly circumvented the licensing mechanisms of the Plaintiffs by marketing and selling on Defendants' own e-commerce sites unlicensed apparel and merchandise that are virtually identical to Plaintiffs' authentic, licensed products. In

COMPLAINT–4

so doing, Defendants divert financial and reputational capital from the universities, ten of which are public, state-funded institutions, and all of which make countless contributions to their communities, states, and beyond. Defendants' conduct is an obvious infringement of Plaintiffs' rights and must be stopped.

## **THE PARTIES**

1. University of Arizona is a public academic institution with its principal campus at 1200 E. University Boulevard, Tucson, Arizona 85721. The Arizona Board of Regents is the governing body of Arizona's public university system and the jural entity that is, under Arizona law, authorized to sue and be sued on behalf of the University of Arizona.

2. Arizona State University is a public academic institution with its principal campus at 1151 S. Forest Avenue, Tempe, Arizona 85281. The Arizona Board of Regents is the governing body of Arizona's public university system and the jural entity that is, under Arizona law, authorized to sue and be sued on behalf of Arizona State University.

3. University of California, Berkeley is a public academic institution with its principal campus at 110 Sproul Hall #5800, Berkeley, California 94720.

4. University of California, Los Angeles is a public academic institution with its principal campus at 405 Hilgard Avenue, Los Angeles, California 90095.

5. University of Colorado Boulder is a public academic institution with its principal campus at 914 Broadway, Boulder, Colorado 80309.

6. University of Oregon is a public academic institution with its principal campus at 1585 E 13th Avenue, Eugene, Oregon 97403.

7. Oregon State University is a public academic institution with its principal campus at 1500 SW Jefferson Way, Corvallis, Oregon 97331.

COMPLAINT–5

8.     USC is a private academic institution with its principal campus at University Park Campus, Los Angeles, California 90089.

9.     Stanford University is a private academic institution with its principal campus at 450 Jane Stanford Way, Stanford, California 94305.

10.    University of Utah is a public academic institution with its principal campus at 201 Presidents' Circle, Salt Lake City, Utah 84112.

11.    University of Washington is a public academic institution with its principal campus at 1410 NE Campus Parkway, Seattle, Washington 98195.

12.    Washington State University is a public academic institution with its principal campus at Office of the President, French Administration Building, P.O. Box 641048, Pullman, Washington 99164-1048.

13.    Upon information and belief, Defendant Sportswear Inc. d/b/a Prep Sportswear ("Prep") is a Washington corporation with its principal place of business at 2211 Elliott Avenue, Suite 601, Seattle, Washington, 98121.

14.    Upon information and belief, Defendant Vintage Brand, LLC ("Vintage") is a Washington limited liability company with its principal place of business at 5323 NE 42nd St., Seattle, Washington, 98105.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121.

16.    This Court has supplemental jurisdiction over Plaintiffs' claims arising under Washington state law pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

17.    This Court has personal jurisdiction over Defendants because, upon information and belief, they carry on substantial and continuous business activities

COMPLAINT–6

in Washington and throughout the country through their interactive e-commerce websites which target consumers nationwide and specifically in this District. Upon information and belief, Defendants have sold and delivered products to residents in this District. Indeed, Defendant Prep's website features goods with the names, color schemes, and/or logos of over 2,400 different schools and institutions located in Washington, many within this judicial district. Defendant Vintage's website also features goods with the names, color schemes, and/or logos of several schools and institutions located in Washington, including in this District.

18.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial District and because Defendants are subject to personal jurisdiction in this judicial District.

## FACTUAL ALLEGATIONS
### Plaintiffs and Their Trademarks

19.    Plaintiffs are the universities that comprise the Pac-12 Conference, and together, are some of the most prominent and well-known universities in the United States, if not the world.

20.    The Pac-12 Conference was established in 1959 (originally under the name "Athletic Association of Western Universities"), consisting then of just four universities, and has since grown to comprise the following twelve universities: University of Arizona, Arizona State University, University of California, Berkeley, University of California, Los Angeles, University of Colorado Boulder, University of Oregon, Oregon State University, University of Southern California, Stanford University, University of Utah, University of Washington, and Washington State University, all Plaintiffs in this action.

COMPLAINT–7

21.    The Pac-12 is one of the "Power Five" conferences, which also include the Atlantic Coast Conference ("ACC"), the Big Ten Conference ("Big 10"), the Big 12 Conference ("Big 12"), and the Southeastern Conference ("SEC").

22.    Nicknamed the "Conference of Champions," Pac-12 teams have won 529 NCAA Championships, over 200 more than the next closest conference. Pac-12 teams have won or tied for the most NCAA titles for 15-consecutive seasons, winning at least six every year from 1999-2019. No other conference has had teams win double-digit NCAA championships in a single year. The Pac-12's success with championships comes from 28 different men's and women's sports. In 54 of the last 60 years, the Pac-12 has led or tied the nation in NCAA Championships. Even more impressive, Pac-12 members have more than 2,200 NCAA individual crowns in men's and women's athletic competitions. Pac-12 teams captured three of the seven national championships held in the 2019-2020 season before the cancellation of many sports competitions due to the Coronavirus pandemic.

23.    The Pac-12 has established its own television network for all Pac-12 athletic events to increase exposure across all of its sports. Additionally, the Pac-12 has media rights deals with ESPN and FOX, which have dramatically increased national exposure and revenue for each school. For the 2018-2019 fiscal year, the Pac-12 reported $530 million in gross revenue from sporting events and activities, including from the sale of branded merchandise and apparel.

24.    Each of the Pac-12's twelve constituent universities is prominent and well-known. Each owns and uses readily identifiable trademarks and trade dress in connection with their institutions and sports teams, as described in more detail below.

COMPLAINT–8

A.    **University of Arizona Wildcats**

25.    Established in 1885, the University of Arizona, a land-grant university with two of the top independently accredited medical institutions, is a widely recognized public university located in Tucson, Arizona. For the past 135 years, the University of Arizona has been at the forefront of research advancement, interdisciplinary scholarship development, and entrepreneurship. With over 45,000 students from the United States and foreign countries learning across 7 different campuses, including an online platform, from over 2,000 faculty members, the University of Arizona is a globally recognized institution.

26.    The University of Arizona Wildcats are highly successful in their 17 Division I athletics programs each year. The Wildcats have won 218 NCAA individual and team national championships. The University of Arizona has produced 122 Olympians, who have made 187 appearances at the Olympic games, earning 74 medals. The University of Arizona also produced 36 current professional athletes across six different sports, including Major League Baseball, the National Basketball Association, and the National Football League. Wildcats sports competitions are televised to national, and sometimes international, audiences.

27.    With a strong alumni network throughout the United States and around the world, the University of Arizona enjoys a large fan base, loyal to the Wildcats and the University of Arizona's brand. The University of Arizona licenses and sells a wide variety of merchandise under the school's various trademarks.

28.    In connection with its educational services, athletic events, and related services, apparel, and merchandise, the University of Arizona has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress including, but not limited to, marks that comprise in whole or in part, ARIZONA, ARIZONA WILDCATS, , and , each alone and in combination with the

COMPLAINT–9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

colors navy blue and cardinal (collectively, together with the marks illustrated in Paragraph 30 and representative Plaintiffs' Marks for the University of Arizona in Paragraph 149, along with the marks listed in Exhibit A, the "Arizona Marks").

29.     The University of Arizona also owns federal registrations for many of these trademarks, including, but not limited to those listed in Exhibit A.

30.     Below are examples of merchandise bearing some of the Arizona Marks:



31.     Through continued use, product and service promotion, and widespread consumer recognition, University of Arizona has developed extremely strong goodwill in the Arizona Marks.

**B.     Arizona State University Sun Devils**

32.     In 1886, the Territorial Normal School, later named Arizona State University, was founded in Tempe, Arizona. With 16 schools across four campuses in the Phoenix metropolitan area, plus additional locations including facilities in California and Washington D.C. and a substantial online program, ASU is a top ranked research university and is recognized by U.S. News and World Report as the

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

country's most innovative school. Among ASU's long list of notable achievements, those that top the list include having over 400 National Academies-honored faculty, 77 programs ranked in the top 25 of the United States, and a nearly $4 billion impact on Arizona's economy in the 2019 fiscal year.

33.     ASU's Division I athletic program is well-known throughout the United States. With 24 Division I men's and women's sports teams, the ASU Sun Devils have won 141 NCAA team national championships and 381 NCAA individual national championships. ASU has produced 179 Olympians and other internationally famous athletes, such as Barry Bonds, Phil Mickelson, and James Harden, who was named the Pac-10 Player of the Year in 2009, prior to the conference's name change to the Pac-12. ASU's athletic competitions are televised to a national, and sometimes international, audience.

34.     With a strong alumni network throughout the United States and around the world, ASU enjoys a large fan base, loyal to the Sun Devils and the ASU brand. ASU licenses and sells a wide variety of merchandise under the school's various trademarks.

35.     In connection with its educational services, athletic events, and related services, apparel, and merchandise, ASU has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress including, but not limited to, marks that comprise in whole or in part, ARIZONA STATE, ASU, and 🔱 each alone and in combination with the colors maroon and gold (collectively, together with the marks illustrated in Paragraph 37 and Representative Plaintiffs' Marks for ASU in Paragraph 149, along with the marks listed in Exhibit B, the "ASU Marks").

36.     ASU also owns federal registrations for many of these trademarks, including, but not limited to those listed in Exhibit B.

COMPLAINT–11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

37.    Below are examples of merchandise bearing some of the ASU Marks:



38.    Through continued use, product and service promotion, and widespread consumer recognition, Arizona State has developed extremely strong goodwill in the ASU Marks.

### C.    University of California, Berkeley Golden Bears

39.    Founded in 1868, the University of California, Berkeley ("Cal") is considered one of the top institutions of higher learning in the country and throughout the world. Ranked the #1 public university worldwide by U.S. News and World Report from 2015-2020, Cal is home to over 184 academic departments and 350-degree programs taught by world-renowned faculty, including 94 Nobel Prize winners either on the current faculty or as previous faculty members.

40.    With 28 Division I men's and women's sports teams, the Cal Golden Bears have claimed 98 NCAA national championship team titles in 16 different sports and 188 NCAA national championship individual titles. Since the Golden Bears' first national championship in 1920, Cal has had at least one national champion in 85 of the last 100 years. For the past 46 years, the Golden Bears have

COMPLAINT–12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

boasted at least one national champion. Cal has also produced 207 Olympic medalists and numerous professional athletes, including Aaron Rodgers, Jared Goff, Alex Morgan, and Marshawn Lynch. Cal athletic competitions are televised to a national, and sometimes international, audience.  For the 2019 fiscal year, Cal received over $90 million in revenue from its athletic programs with $17 million coming from royalties, licensing, advertisement, and sponsorships.

41.    With a strong alumni network throughout the United States and around the world, Cal enjoys a large fan base, loyal to the Golden Bears and the Cal brand. Cal licenses and sells a wide variety of merchandise under the school's various trademarks.

42.    In connection with its educational services, athletic events, and related services, apparel, and merchandise, Cal has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress including, but not limited to, marks that comprise in whole or in part, *Cal*, GOLDEN BEARS, , and , each alone and in combination with the colors blue and gold (collectively, together with the marks illustrated in Paragraph 44 and Representative Plaintiffs' Marks for Cal in Paragraph 149, along with the marks listed in Exhibit C, the "Cal Marks").

43.    Cal also owns incontestable federal registrations for many of these trademarks, including, but not limited to those listed in Exhibit C.

44.    Below are examples of merchandise bearing some of the Cal Marks:

   

COMPLAINT–13

1
2
3
4
5

 

6    45.    Through continued use, product and service promotion, and widespread

7    consumer recognition, Cal has developed extremely strong goodwill in the Cal

8    Marks.

9        **D.    University of California, Los Angeles Bruins**

10   46.    Since its establishment in 1919, the University of California, Los

11   Angeles ("UCLA") has been one of the most well-respected institutions of higher

12   learning in the country. As the most applied-to university in the nation (including a

13   28% increase in freshman applications this year to reach almost 139,000), UCLA

14   was ranked as the #1 public university by U.S. News and World Report for the 2021

15   national rankings. UCLA is home to over 40,000 undergraduate and graduate

16   students from 47 states and 84 countries. UCLA offers over 3,900 courses for over

17   125 majors to its undergraduates and nearly 150 graduate degree programs. The

18   4,300 on-campus faculty members include Nobel Prize winners, MacArthur fellows,

19   and recipients of the Fields Medal and Turing Award, some of academia's highest

20   honors.

21   47.    UCLA's 21 Division I men's and women's sports teams are admired

22   by fans from the United States and around the world. Throughout the school's

23   history, the UCLA Bruins have earned more than 100 NCAA titles. The Bruins

24   men's basketball team, known for its association with coaching legend John

25   Wooden, boasts four undefeated seasons and 11 national championships. Ranking

26   UCLA higher in medal count than most countries, Bruins athletes and coaches have

COMPLAINT–14

earned 261 Olympic medals.  UCLA has nurtured internationally renowned athletes such as Kareem Abdul-Jabbar, Jackie Joyner-Kersee, Florence Griffith-Joyner, and Gail Goodrich. UCLA sports competitions are televised to a national, and sometimes international, audience.

48.     With a strong alumni network throughout the United States and around the world, UCLA enjoys a large global fan base, loyal to the Bruins and the UCLA brand.  Throughout the world, UCLA licenses and sells a wide variety of merchandise under the school's various trademarks.

49.     In connection with its educational services, athletic events, and related services, apparel, and merchandise, UCLA has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress including, but not limited to, marks that comprise in whole or in part, UCLA, *Ucla*, BRUINS, and 🐻, each alone and in combination with the colors blue and gold (collectively, together with the marks illustrated in Paragraphs 51, 124 and 137 and Representative Plaintiffs' Marks for UCLA in Paragraphs 130 and 149, along with the marks listed in Exhibit D, the "UCLA Marks").

50.     UCLA also owns federal registrations, in addition to numerous international registrations, for many of these trademarks, including, but not limited to those listed in Exhibit D. Many of the UCLA federal registrations have attained incontestable status.

51.     Below are examples of merchandise bearing some of the UCLA Marks:

  

COMPLAINT–15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2

3

4

5

   

6

7

8

9

52.     Through continued use, product and service promotion, and widespread consumer recognition, UCLA has developed extremely strong goodwill in the UCLA Marks.

**E.     University of Colorado Buffaloes**

53.     Established in 1876, the University of Colorado Boulder ("CU") is considered the flagship public academic institution in the state of Colorado. Ranked in the Top 25 colleges for students who want to change the world by Business Insider in 2016, CU provides educational services, research, outreach, development and other related scholarly pursuits in over 4,000 academic courses across 150 fields of study to over 30,000 students annually.

54.     CU's athletic program consists of 15 Division I men's and women's sports teams.  The Colorado Buffaloes have won 27 NCAA team championships. CU has produced 99 Olympians, winning 20 Olympic medals, in 154 Olympic appearances. CU sports competitions are televised to a national, and sometimes international, audience.

55.     With a strong alumni network throughout the United States and around the world, CU enjoys a large fan base, loyal to the Buffaloes and the CU brand. CU licenses and sells a wide variety of merchandise under the school's various trademarks.

COMPLAINT–16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8

56.     In connection with its educational services, athletic events, and related services, apparel, and merchandise, CU has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress including, but not limited to, marks that comprise in whole or in part, COLORADO BUFFALOES, GOLDEN BUFFALOES, BUFFS, RALPHIE, and , each alone and in combination with the colors black, silver, and gold (collectively, together with the marks illustrated in Paragraph 58 and Representative Plaintiffs' Marks for CU in Paragraph 149, along with the marks listed in Exhibit E, the "CU Marks").

9
10

57.     CU also owns federal registrations for many of these trademarks, including, but not limited to those listed in Exhibit E.

11

58.     Below are examples of merchandise bearing some of the CU Marks:

12
13
14
15
16
17
18
19
20
21



22
23
24

59.     Through continued use, product and service promotion, and widespread consumer recognition, CU has developed extremely strong goodwill in the CU Marks.

25
26

COMPLAINT–17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

### F.     University of Oregon Ducks

2     60.     The University of Oregon was founded in 1876 in Eugene, Oregon.

3   Since its establishment, the institution has grown to house nine schools and colleges

4   offering 331 degree and certificate programs to more than 24,000 students, from all

5   50 states and more than 95 countries, annually. The University of Oregon has over

6   2,000 faculty members, including one Nobel Prize winner, two National Medal of

7   Science recipients, and three Pulitzer Prize winners.  In 2016, the University of

8   Oregon produced $2.2 billion in economic returns to the State of Oregon.

9     61.     Competing under the team nickname, "Ducks," the University of

10   Oregon competes in 17 Division I men's and women's athletic competitions and has

11   won 24 national championships. In 2020, the University of Oregon's athletics

12   revenue was almost $125,000,000. 16% of that total revenue, or almost $20,000,000,

13   came from sponsorships, royalties, and licensing of merchandise sold under the

14   school's various trademarks.

15     62.     In connection with its educational services, athletic events, and related

16   services, apparel, and merchandise, the University of Oregon has adopted, makes

17   extensive use of, and owns rights in and to a family of trademarks and trade dress

18   including, but not limited to, marks that comprise in whole or in part, OREGON,

19   DUCKS, and , each alone and in combination with the colors green and yellow

20   (collectively, together with the marks illustrated in Paragraphs 64, 123, 136 and 142

21   and Representative Plaintiffs' Marks for the University of Oregon in Paragraphs 130

22   and 149, along with the marks listed in Exhibit F, the "University of Oregon

23   Marks").

24     63.     The University of Oregon also owns federal registrations for many of

25   these trademarks, including, but not limited to those listed in Exhibit F.

26

COMPLAINT–18

64.   Below are examples of merchandise bearing some of the University of Oregon Marks:



65.   Through continued use, product and service promotion, and widespread consumer recognition, the University of Oregon has developed extremely strong goodwill in the University of Oregon Marks.

**G.   Oregon State University Beavers**

66.   In 1868, Oregon State University was established in Corvallis, Oregon. Since its founding, Oregon State University has become an international public research institution, consisting of two campuses, 11 colleges, and 12 experiment stations with extension programs in all 36 Oregon counties. Oregon State University offers over 200 academic programs to over 30,000 students from 47 states and more than 100 countries. With an innovative, state-of-the-art research program, Oregon State University is a trailblazer in practical, problem-solving research aimed at improving lives, protecting natural resources, and driving economic growth.

67.   Oregon State University competes in 16 Division I men's and women's sports. Oregon State University has produced 71 Olympic athletes, winning 22 medals, and has inducted over 150 athletes into its Hall of Fame. Oregon State

COMPLAINT–19

University's sports competitions are televised to a national, and sometimes international, audience.

68.     With a strong alumni network throughout the United States and around the world, Oregon State University enjoys a large fan base, loyal to the Beavers and the Oregon State University brand. Oregon State University licenses and sells a wide variety of merchandise under the school's various trademarks.

69.     In connection with its educational services, athletic events, and related services, apparel, and merchandise, Oregon State University has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress including, but not limited to, marks that comprise in whole or in part, OREGON STATE BEAVERS, OSU BEAVERS, OSU, OREGON STATE UNIVERSITY, , and , each alone and in combination with the colors orange, black, and white (collectively, together with the marks illustrated in Paragraph 71 and Representative Plaintiffs' Marks for Oregon State University in Paragraph 149, along with the marks listed in Exhibit G, the "Oregon State University Marks").

70.     Oregon State University also owns federal registrations for many of these trademarks, including, but not limited to those listed in Exhibit G.

71.     Below are examples of merchandise bearing some of the Oregon State University Marks:



COMPLAINT–20

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5

   

6
7
8

72.     Through continued use, product and service promotion, and widespread consumer recognition, Oregon State University has developed extremely strong goodwill in the Oregon State University Marks.

9

**H.     University of Southern California Trojans**

10
11
12
13
14
15
16
17
18
19

73.     In 1880, the University of Southern California ("USC") was founded in Los Angeles, California.  USC is now home to over 45,000 students hailing from the United States and around the world. USC offers undergraduate and graduate courses taught by 4,000 full-time faculty members, including five Nobel laureates and dozens of recipients of prestigious national honors. As one of the world's leading private research universities, USC has become a global center for arts, technology, and international business. The Wall Street Journal and Times Higher Education recently ranked USC as the 19th best university in the United States. USC generates $8 billion annually in economic return for Los Angeles County and the State of California.

20
21
22
23
24
25
26

74.     USC's athletic program hosts 21 men's and women's Division I sports. USC has won the third most national championships in the United States and has won at least one national team title in the last 26 consecutive years. USC has nurtured 453 Olympian athletes, winning 307 medals. USC has produced dozens of elite athletes, including Carson Palmer and Matt Leinart, among other Heisman Trophy winners. USC's athletic competitions are televised to a national, and sometimes international, audience.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

75.     With a strong alumni network throughout the United States and around the world, USC enjoys a large fan base, loyal to the Trojans and the USC brand. USC licenses and sells a wide variety of merchandise under the school's various trademarks.

76.     In connection with its educational services, athletic events, and related services, apparel, and merchandise, the USC has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress including, but not limited to, marks that comprise in whole or in part, TROJANS, USC, SOUTHERN CAL, SC, 🆂🅲 , and 🏇 , each alone and in combination with the colors gold and cardinal (collectively, together with the marks illustrated in Paragraph 78 and Representative Plaintiffs' Marks for USC in Paragraph 149, along with the marks listed in Exhibit H, the "USC Marks").

77.     USC also owns federal registrations for many of these trademarks, including, but not limited to those listed in Exhibit H.

78.     Below are examples of merchandise bearing some of the USC Marks:



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

79.    Through continued use, product and service promotion, and widespread consumer recognition, USC has developed extremely strong goodwill in the USC Marks.

## I.    Stanford University Cardinal

80.    Established in 1885 and first opened for enrollment in 1891, Stanford University is currently home to over 6,000 undergraduate and graduate students from 50 states and over 50 countries. Stanford offers more than 65 undergraduate majors taught by over 2,000 distinguished faculty members, including 19 Nobel laureates. As a top academic institution, Stanford is famous throughout the United States and the world for its research, educational and athletic programs alike.

81.    With 36 Division I men's and women's sports teams, Stanford has won 126 NCAA national championships with at least one Stanford team winning a NCAA national championship during each of the last 44 years. Since 2000, Stanford has captured 50 NCAA crowns and 65 national team championships. Stanford athletes have been medalists in every Olympics in which the United States has competed since 1912 and have captured 270 medals. Stanford has produced many renowned athletes, such as John Elway, Andrew Luck, Tiger Woods, Kerri Walsh, and Katie Ledecky. Stanford athletic competitions are televised to a national, and sometimes international, audience.

82.    With a strong alumni network throughout the United States and around the world, Stanford enjoys a large fan base, loyal to the Cardinal and the Stanford brand. Stanford licenses and sells a wide variety of merchandise under the school's various trademarks.

83.    In connection with its educational services, athletic events, and related services, apparel, and merchandise, Stanford has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress including,

COMPLAINT–23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

but not limited to, marks that comprise in whole or in part, STANFORD, **S** , CARDINAL, and FARM, each alone and in combination with the colors cardinal, black, white, and sandstone (collectively, together with the marks illustrated in Paragraph 85 and Representative Plaintiffs' Marks for Stanford in Paragraph 149, along with the marks listed in Exhibit I, the "Stanford Marks").

84.     Stanford also owns federal registrations for many of these trademarks, including, but not limited to those listed in Exhibit I.

85.     Below are examples of merchandise bearing some of the Stanford Marks:



86.     Through continued use, product and service promotion, and widespread consumer recognition, Stanford has developed extremely strong goodwill in the Stanford Marks.

**J.     University of Utah Utes**

87.     Established in 1850, the University of Utah is the state's flagship public academic institution and a top-tier research university. Located in the heart of Salt Lake City, the University of Utah offers over 30,000 students, coming from throughout the United States and foreign countries, rigorous educational courses, athletics, and recreation programs. The University of Utah has over 3,000 full-time

COMPLAINT–24

faculty members, consisting of a Nobel Prize winner and Guggenheim Foundation Fellows, that teach more than 80 undergraduate majors and over 15 graduate areas of study.

88.    With 20 Division I men's and women's sports teams, the University of Utah has won 20 NCAA national championships. The University of Utah Utes have finished in the nation's Top 25 eight times in men's football and have made 29 NCAA men's basketball appearances. The University of Utah has produced numerous renowned athletes, including Alex Smith, Andre Miller, and Steve Smith, Sr. The University of Utah also sent 13 Utes to the 2018 Winter Olympics. Utes competitions are televised to a national, and sometimes international, audience. Of almost $100 million in Utes athletic revenue from 2019, over $12 million came from royalties, licensing, advertisement and sponsorships.

89.    With a large alumni network throughout the United States and around the world, the University of Utah enjoys a large fan base, loyal to the Utes and the University of Utah brand. The University of Utah licenses and sells a wide variety of merchandise under the school's various trademarks.

90.    In connection with its educational services, athletic events, and related services, apparel, and merchandise, the University of Utah has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress including, but not limited to, marks that comprise in whole or in part, UTES,  , and , each alone and in combination with the colors red, black, and gray (collectively, together with the marks illustrated in Paragraph 92 and Representative Plaintiffs' Marks for the University of Utah in Paragraph 149, along with the marks listed in Exhibit J, the "Utah Marks").

91.    The University of Utah also owns federal registrations for many of these trademarks, including, but not limited to those listed in Exhibit J.

COMPLAINT–25

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

92.    Below are examples of merchandise bearing some of the Utah Marks:



93.    Through continued use, product and service promotion, and widespread consumer recognition, the University of Utah has developed extremely strong goodwill in the Utah Marks.

**K.    University of Washington Huskies**

94.    From its beginnings in 1861, the University of Washington has become one of the world's preeminent public universities. The University of Washington educates over 54,000 students annually. The University of Washington is a multi-campus university with locations in Seattle, Tacoma, and Bothell. The University of Washington's colleges and schools offer 1,800 undergraduate courses each quarter and confer more than 12,000 bachelor's, master's, doctoral and professional degrees annually. The University of Washington's faculty has included at least seven Nobel laureates and at least eight Pulitzer Prize winners.

95.    With 22 Division I men's and women's sports teams, the University of Washington Huskies have won nine NCAA championships. The Huskies have also made 38 football bowl game appearances and 17 appearances in the NCAA men's basketball tournament. More than 150 University of Washington athletes have

COMPLAINT–26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

competed in the Olympic games, winning more than 70 medals. University of Washington athletic competitions are televised to a national, and sometimes international, audience.

96.     With a strong alumni network throughout the United States and around the world, the University of Washington enjoys a large fan base, loyal to the Huskies and the University of Washington brand. The University of Washington licenses and sells a wide variety of merchandise under the school's various trademarks.

97.     In connection with its educational services, athletic events, and related services, apparel, and merchandise, the University of Washington has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress including, but not limited to, marks that comprise in whole or in part, UNIVERSITY OF WASHINGTON, HUSKIES, **W**, and , each alone and in combination with the colors purple and gold (collectively, together the with marks illustrated in Paragraph 99 and Representative Plaintiffs' Marks for the University of Washington in Paragraph 149, along with the marks listed in Exhibit K, the "UW Marks").

98.     The University of Washington also owns federal registrations for many of these trademarks, including, but not limited to those listed in Exhibit K.

COMPLAINT–27

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

99.   Below are examples of merchandise bearing some of the UW Marks:



100.   Through continued use, product and service promotion, and widespread consumer recognition, the University of Washington has developed extremely strong goodwill in the Washington Marks.

**L.   Washington State University Cougars**

101.   Since its founding in 1890, Washington State University, Washington's original land grant university, has grown to 11 colleges across six different campuses, including an online campus. Washington State University educates over 30,000 students annually from 48 states and 106 countries.

102.   Washington State University has 15 Division I men's and women's athletic teams.  The Washington State University Cougars have won eight of their 15 football bowl games and have appeared five times in the NCAA men's basketball tournament, winning one national championship. The Washington State University flag has proudly become an ESPN College GameDay broadcast tradition, appearing on every ESPN College GameDay set since the 2003 football season. Over 50 Washington State University athletes have competed in the Olympic Games over the past eight decades, winning medals in nine events. The Washington State University

COMPLAINT–28

Cougars have produced numerous athletes that have gone on to play professionally in the National Basketball Association, National Football League and Major League Baseball, including Klay Thompson, Drew Bledsoe, Mark Rypien and Jason Hanson. Washington State sports competitions are televised to a national, and sometimes international, audience.

103.   With a strong alumni network throughout the United States and around the world, Washington State University enjoys a large fan base, loyal to the Cougars and the Washington State brand. Washington State licenses and sells a wide variety of merchandise under the school's various trademarks.

104.   In connection with its educational services, athletic events, and related services, apparel, and merchandise, the Washington State University has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress including, but not limited to, marks that comprise in whole or in part, WASHINGTON STATE COUGARS, WSU COUGARS, and ![cougar logo], each alone and in combination with the colors crimson and gray (collectively, together with the marks illustrated in Paragraph 106 and Representative Plaintiffs' Marks for Washington State University in Paragraph 149, along with the marks listed in Exhibit L, the "WSU Marks").

105.   Washington State also owns federal registrations for many of these trademarks, including, but not limited to those listed in Exhibit L.

106.   Below are examples of merchandise bearing some of the WSU Marks:






COMPLAINT–29

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5

  

6   107.   Through continued use, product and service promotion, and widespread

7   consumer recognition, Washington State has developed extremely strong goodwill

8   in the Washington State Marks.

9   **The Incontestability, Fame, and Value of Plaintiffs' Marks**

10   108.   The Arizona Marks, ASU Marks, Cal Marks, UCLA Marks, CU Marks,

11   Oregon Marks, Oregon State University Marks, USC Marks, Stanford Marks, Utah

12   Marks, UW Marks, and WSU Marks, taken together, will be collectively referred to

13   as "Plaintiffs' Marks."

14   109.   Pursuant to Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b),

15   Plaintiffs' federal registration certificates are *prima facie* evidence of the validity of

16   Plaintiffs' Marks as well as Plaintiffs' ownership and exclusive right to use these

17   marks in connection with the identified goods and services.

18   110.   Many of Plaintiffs' Mark have achieved incontestable status under

19   Section 15 of the Lanham Act, 15 U.S.C. § 1065.  See Exhibits A-L.

20   111.   Plaintiffs consistently and prominently use and display Plaintiffs'

21   Marks in connection with Plaintiffs' educational services, athletic events, apparel,

22   merchandise and related goods and services ("Plaintiffs' Goods and Services").

23   112.   As a result of the extensive sales, advertising, and promotion of

24   Plaintiffs' Goods and Services under Plaintiffs' Marks by each Plaintiff, and through

25   widespread consumer acceptance and recognition, the consuming public have come

26

COMPLAINT–30

to recognize Plaintiffs' Marks as identifying sources of high-quality products and services.

113.   Many of Plaintiffs' Marks have been in use and associated with Plaintiffs and Plaintiffs' Goods and Services for decades. To honor this history, each of the Plaintiffs maintains robust "vintage trademark" programs wherein they actively use and promote historical trademarks and trade dress in addition to their more up-to-date designs and styles.

114.   Many of Plaintiffs' Marks have become famous and are assets of incalculable value as a symbol of the respective Plaintiffs, their quality products and services, and their extensive goodwill.

<u>**Defendants' Infringement**</u>

115.   Defendants sell and distribute sports and team apparel through their respective e-commerce sites.

116.   Upon information and belief, Defendants are closely-related business entities with a shared principal/owner, Mr. Chad Hartvigson, and the same office location in Seattle, Washington.

**A.     Prep Sportswear**

117.   Defendant Prep operates a website at www.prepsportswear.com.

118.   Upon information and belief, Prep primarily fulfills orders on a print-on-demand model, although it also offers products that are in stock and available for immediate shipment.

119.   Prep offers apparel featuring the names, color schemes, insignias, and other trademarks and source identifiers of thousands of colleges, universities, schools, sports teams, and other institutions, including those of Plaintiffs.

120.   Consumers can search for and find team-branded apparel on the Prep website in a number of ways.

COMPLAINT–31

121.    For many of the institutions for which Prep offers apparel, Prep features an "apparel store" that displays goods for sale bearing the institution's insignias, color schemes, and other branding. So, for example, a consumer can navigate through lists of institutions based on the type of institution, name, location, conference, sport, mascot, and so on.

122.    Prep's "mascot" listings, for example, include over 400 mascots, including those of the Plaintiffs identified here: "Ducks," "Wildcats," "Golden Bears," "Buffaloes," "Beavers," "Bruins," "Huskies," and "Cougars," among many others.

123.    Clicking on any of these mascot links will lead the customer to the "apparel store" for that "mascot." For example, if the user locates and clicks on "Ducks" from within the mascots list, the user is then taken to the "Ducks Apparel Store," which appears as follows:

COMPLAINT–32



124.   Similarly, if the user locates and clicks on "Bruins" from within the mascots list, the user is then taken to the "Bruins Apparel Store," which appears as follows:

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000



125.    The Prep website also prominently features a large search bar that allows users to perform keyword searches. For example, if a customer is looking for University of Oregon Ducks merchandise, she can simply type "ducks" or "Oregon" in the search bar and then click on the link to the "Ducks Apparel Store" or "Oregon Apparel Store" that appears in a drop-down menu.

COMPLAINT–34

126.   Similarly, if, for example, a customer is looking for UCLA merchandise, she can simply type "Bruins" in the search bar and then click on the link to the "Bruins Apparel Store" that appears in a drop-down menu.

127.   Consumers can also navigate to, for example, a "Washington School of Medicine Apparel Store," a "Colorado Apparel Store," a "California Apparel Store," a "Washington Apparel Store," among many others.

128.   When the user gets to the desired "apparel store" within the Prep site, she is presented with merchandise that looks nearly identical to authentic, licensed merchandise featuring Plaintiffs' Marks, but the merchandise is neither licensed nor authentic.

129.   Goods for sale listed on these webpages include, but are not limited to, t-shirts, sweatshirts, sweatpants, and hats.

130.   Representative samples of infringing goods using, for example, the University of Oregon Marks and the UCLA Marks displayed for sale on Prep's website include:



COMPLAINT–35

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7

  

8
9
10
11
12
13
14

131.   According to Prep's website, it continues to expand and has appeared on the Inc. 500|5000 list of fastest-growing private U.S. companies five straight years from 2009-2013 and was recognized by Apparel Magazine with a 2010 Top Innovator Award. The company was ranked #543 on the 2017 Internet Retailer Second 500 list of largest online retailers and #163 in the Apparel/Accessories category. By all accounts, Prep sells a large volume of merchandise and is a growing company with a far-reaching customer base.

15
16

**B.     Vintage Brand**

132.   Defendant Vintage operates a website at www.vintagebrand.com.

17
18
19

133.   Through its website, Vintage offers a wide variety of apparel and other goods featuring college team names, color schemes, insignias, mascots, logos, and other trademarks and source identifiers.

20
21

134.   Among the goods offered on the Vintage site are t-shirts, sweatshirts, hats, pennants, drinkware, posters, magnets, puzzles, among many other items.

22
23
24

135.   Consumers can find team-branded merchandise by navigating a series of drop-down menus, or by performing a keyword search for the team/school whose gear they are searching for.

25
26

COMPLAINT–36

1

2

3

4

136.   For example, if a customer clicks on "Oregon Ducks" from within the list of College teams, she will be directed to a page displaying merchandise with Oregon Ducks branding, representative samples of which are shown below:



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

137.   Similarly, if a customer clicks on "UCLA Bruins" from within the list of College teams, she will be directed to a page displaying merchandise with UCLA Bruins branding, representative samples of which are shown below:



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

138.   Vintage purports to offer goods featuring vintage sports branding reproduced from historic memorabilia but ultimately designed by Vintage.

139.   In reality, the products offered by Vintage bear Plaintiffs' Marks or marks that are virtually identical to Plaintiffs' Marks and are a deliberate attempt to take advantage of the tremendous goodwill associated with Plaintiffs and Plaintiffs' Marks.

140.   Indeed, Vintage is transparent about its target market—on the Oregon Ducks team page, for example, Vintage states: "The Vintage Brand Duck Shop at VintageBrand.com is the ultimate destination for die-hard Oregon Ducks fans and alumni…"

141.   Also by way of example, at the top of the Oregon Ducks team page, the Vintage site states: "Oregon Ducks Vintage Designs For Apparel & Gear," in a blatant attempt to trade on the goodwill and reputation of the University of Oregon.

142.   Representative samples of infringing goods using Plaintiffs' Marks displayed on Vintage's website include:

  

143.   As further evidence of Vintage's clear intent to target Plaintiffs' consumers and fans, in one bizarre recent incident, Vintage inadvertently sent several boxes of Vintage Brand insulated drink holders bearing USC's Marks and

COMPLAINT–39

Vintage marketing collateral to USC itself, instead of sending these materials to Vintage's own creative director. These insulated drink holders were apparent giveaways for USC fans at the Trojans football game and included a Vintage marketing promotion to attract USC fans to its site to sell additional apparel and merchandise bearing USC Marks.

### C.    Defendants' Infringing Conduct

144.    As shown above, Defendants market and sell without authorization a wide variety of apparel and other items featuring virtually identical trademarks to those owned and used by Defendants (the "Infringing Marks").

145.    Long after many of Plaintiffs' Marks had become famous in the United States, Defendants began using numerous confusingly similar marks in an obvious attempt to ride on the coattails of Plaintiffs' fame and to improperly trade on the goodwill that Plaintiffs' have worked so hard to build in their distinctive brands.

146.    Upon information and belief, Defendants have used the Infringing Marks in U.S. commerce by marketing and selling their merchandise, including on and through Defendants' respective websites.

147.    At the time they first used the Infringing Marks, Defendants had knowledge of Plaintiffs' rights in Plaintiffs' Marks

148.    Plaintiffs' rights in Plaintiffs' Marks predate Defendants' use of the Infringing Marks.

149.    The Infringing Marks are confusingly similar in sight and commercial impression to Plaintiffs' Marks, as further illustrated below:

COMPLAINT–40

| Representative Plaintiffs' Marks | Representative Infringing Marks Used By Defendants |
|---|---|
| **University of Arizona (Wildcats)**  |  |

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

| Representative Plaintiffs' Marks | Representative Infringing Marks Used By Defendants |
|---|---|
| **Arizona State University (Sun Devils)**<br> |  |

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

| Representative Plaintiffs' Marks | Representative Infringing Marks Used By Defendants |
|---|---|
| |  |
| **University of California, Berkeley (Golden Bears)**  |  |
| **University of California, Los Angeles (UCLA Bruins)** **UCLA**  |  |

COMPLAINT–43

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

| Representative Plaintiffs' Marks | Representative Infringing Marks Used By Defendants |
|---|---|
| |  |
| **University of Colorado (Buffaloes)**<br> |  |

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

| Representative Plaintiffs' Marks | Representative Infringing Marks Used By Defendants |
|---|---|
| **University of Oregon (Ducks)**  |  |
| **Oregon State University (Beavers)**  |  |

COMPLAINT–45

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

| Representative Plaintiffs' Marks | Representative Infringing Marks Used By Defendants |
|---|---|
| |  |
| University of Southern California (USC Trojans)  |    |
| Stanford University (Cardinal)  |  |

COMPLAINT–46

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



| Representative Plaintiffs' Marks | Representative Infringing Marks Used By Defendants |
|---|---|
| **University of Utah (Utes)** | |
| **University of Washington (Huskies)** | |

COMPLAINT–47

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

| Representative Plaintiffs' Marks | Representative Infringing Marks Used By Defendants |
|---|---|
| **Washington State University (Cougars)**  | |

150.   The goods offered under the Infringing Marks are directly competitive with the goods offered by Plaintiffs under Plaintiffs' Marks.

151.   Plaintiffs did not authorize Defendants' use of the Infringing Marks.

152.   The Infringing Marks so closely resemble Plaintiffs' Marks that, when used in connection with Defendants' goods, they are highly likely to cause confusion, mistake or deception of the relevant trade and public. Consumers will likely believe that Defendants' goods are in some way associated with or connected with, or approved, sponsored, or authorized by Plaintiffs, when this is not the case.

153.   Defendants' Infringing Marks are counterfeits of Plaintiffs' Marks, as defined in 15 U.S.C. § 1116(d).

COMPLAINT–48

154.   The Infringing Marks so closely resemble Plaintiffs' Marks that, when used in connection with Defendants' goods, they are likely to cause dilution by blurring of the famous Plaintiffs' Marks. Due to the close similarity between Plaintiffs' Marks and the Infringing Marks, consumers will likely associate Defendants and/or Defendants' goods with Plaintiffs and/or Plaintiffs' Goods and Services, which will impair the distinctiveness of the famous Plaintiffs' Marks.

## <u>COUNT I</u>
### Infringement of Federally Registered Trademark
### (Lanham Act § 32(1), 15 U.S.C. § 1114(1))

155.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

156.   Plaintiffs own valid and existing rights in and to Plaintiffs' Marks.

157.   Defendants use in interstate commerce colorable imitations and/or copies of Plaintiffs' Marks in connection with Defendants' unauthorized promotion and sale of Defendants' apparel and other goods.

158.   Defendants' unauthorized use of the Infringing Marks is likely to cause confusion and mistake among consumers and others as to the source, origin or sponsorship of Defendants' products sold under the Infringing Marks.

159.   Defendants' unauthorized use of the Infringing Marks in interstate commerce constitutes trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

160.   Defendants' unauthorized use of the Infringing Marks is a knowing, willful, and intentional violation of Plaintiffs' rights.

161.   Defendants' infringement diminishes the value of Plaintiffs' Marks, goodwill, and business reputation. Further, Defendants' infringement is causing and, unless restrained, will continue to cause great and irreparable injury to Plaintiffs and

COMPLAINT–49

to the recognition and goodwill represented by Plaintiffs' Marks, in an amount that cannot be ascertained at this time, leaving Plaintiffs with no adequate remedy at law.

162.   By reason of the foregoing, Plaintiffs are entitled to injunctive relief restraining Defendants from any further infringement of Plaintiffs' Marks, and also are entitled to recover Defendants' profits, actual damages, enhanced profits and damages (including trebling), costs, reasonable attorneys' fees, interest, and/or statutory damages under 15 U.S.C. §§ 1114, 1116, and 1117.

<u>**COUNT II**</u>
**Trademark Counterfeiting**
**(Lanham Act § 35, 15 U.S.C. § 1117(b) and (c))**

163.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

164.   Plaintiffs own valid and existing rights in and to Plaintiffs' Marks.

165.   Defendants use in interstate commerce marks that are identical with and/or substantially indistinguishable from Plaintiffs' Marks in connection with Defendants' promotion and sale of Defendants' apparel and other goods.

166.   Defendants' unauthorized use of the Infringing Marks is likely to cause confusion and mistake among consumers and others as to the source, origin or sponsorship of Defendants' products sold under the Infringing Marks.

167.   Defendants' unauthorized use of the Infringing Marks is a knowing, willful, and intentional violation of Plaintiffs' rights.

168.   Defendants intentionally used the Infringing Marks knowing that the Infringing Marks are counterfeits of Plaintiffs' Marks.

169.   Defendants' conduct constitutes willful counterfeiting pursuant to 15 U.S.C. § 1117(b) and (c).

COMPLAINT–50

170. By reason of the foregoing, Plaintiffs are entitled to recover Defendants' profits and/or actual damages, trebled, reasonable attorneys' fees, and prejudgment interest, and/or statutory damages for each counterfeit mark used.

## COUNT III
### Federal Trademark Dilution
### (Lanham Act § 43(c), 15 U.S.C. § 1125(c))

171. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

172. Plaintiffs own valid and existing rights in and to Plaintiffs' Marks.

173. Through long-standing and continued use, product and service promotion, and widespread consumer recognition, many of Plaintiffs' Marks have become famous. Long after those Plaintiffs' Marks became famous, Defendants began using (and are still using) the Infringing Marks on their similar apparel and goods. In so doing, Defendants are improperly creating a false association between their unauthorized products and Plaintiffs and/or Plaintiffs' Marks.

174. This association is likely to cause a dilution of the strong goodwill that Plaintiffs have built in Plaintiffs' Marks, in violation of 15 U.S.C. § 1125(c).

175. As a result of Defendants' wrongful and intentional conduct, Plaintiffs have been damaged and will continue to be damaged in an amount to be determined at trial.

176. Defendants' unauthorized use of the Infringing Marks is knowing and willful and with the intent to trade on the substantial goodwill Plaintiffs have established in Plaintiffs' Marks.

177. Unless enjoined, Defendants' behavior will continue and will continue to cause Plaintiffs to suffer irreparable harm for which there is no adequate remedy at law. Plaintiffs are therefore entitled to injunctive relief.

COMPLAINT–51

178.   Plaintiffs have been harmed by Defendants' unauthorized use of the Infringing Marks and are entitled to monetary relief.

## COUNT IV
### False Designation of Origin
### (Lanham Act § 43(a), 15 U.S.C. § 1125(a))

179.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

180.   Plaintiffs use and own Plaintiffs' Marks in connection with the sale of, among other things, apparel and merchandise. Plaintiffs' Marks are inherently distinctive and have also acquired secondary meaning as a designation of source for Plaintiffs.

181.   In connection with their promotion and sale of their own apparel and merchandise, Defendants use in interstate commerce the Infringing Marks. Defendants' use of the Infringing Marks is likely to cause confusion and mistake and to deceive consumers and others as to the origin, sponsorship or affiliation of the parties' products. Consumers seeing apparel and merchandise sold under the Infringing Marks in the marketplace are likely to believe those products are sponsored by, associated with or otherwise affiliated with Plaintiffs, when they are not.

182.   Defendants' use of the Infringing Marks constitutes false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

183.   Defendants' use of the Infringing Marks is a knowing, willful, and intentional violation of Plaintiffs' rights.

184.   Defendants' acts of false designation of origin, unless restrained, will cause great and irreparable harm to Plaintiffs and to the significant goodwill represented by Plaintiffs' Marks, in an amount that cannot be ascertained at this time, leaving Plaintiffs with no adequate remedy at law.

COMPLAINT–52

185.   By reason of the foregoing, Plaintiffs are entitled to injunctive relief against Defendants, restraining them from any further acts of false designation of origin, and are also entitled to recovery of Defendants' profits, actual damages, enhanced profits and damages (including trebling), costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116, 1117, and 1125.

## COUNT V
### Trademark Dilution under Washington Law
### (RCW § 19.77.160)

186.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

187.   Plaintiffs own valid and existing rights in and to Plaintiffs' Marks.

188.   Many of Plaintiffs' Marks are famous throughout the United States and globally, including in the State of Washington.

189.   Defendants' unauthorized use of the Infringing Marks is likely to injure Plaintiffs' reputation and has diluted, or is likely to dilute, the distinctive quality of Plaintiffs' Marks in violation of RCW § 19.77.160.

190.   Defendants' misconduct has been and is a knowing, deliberate, and willful attempt to trade on Plaintiffs' reputations.

191.   Defendants' wrongful acts have caused and will continue to cause Plaintiffs irreparable harm. Plaintiffs have no adequate remedy at law for Defendants' violations.

192.   Plaintiffs are entitled to a judgment enjoining and restraining Defendants from engaging in further acts of injury or dilution to Plaintiffs' reputation.

193.   Plaintiffs are also entitled to actual damages, enhanced damages (including trebling), costs, and reasonable attorneys' fees.

COMPLAINT–53

1
2
3

**COUNT VI**
**Unfair and Deceptive Trade Practices under**
**Washington Consumer Protection Act**
**(RCW § 19.86.020)**

4   194.   Plaintiffs incorporate the preceding paragraphs as if fully set forth
5 herein.

6   195.   Defendants are engaged in unfair and deceptive acts by using the
7 Infringing Marks in connection with the promotion and sale of Defendants' apparel
8 and merchandise in commerce.

9   196.   Defendants' unfair and deceptive acts are likely to cause confusion or
10 mistake among Washington consumers and others as to the source or affiliation of
11 Defendants' products, contrary to the public interest.

12   197.   Defendants' unfair and deceptive acts, unless restrained, will cause
13 great and irreparable harm to Plaintiffs, will cause Plaintiffs to lose revenue and
14 profits, and will diminish the value of Plaintiffs' Marks, goodwill, and reputation.

15   198.   Defendants' unfair and deceptive acts have been and are a knowing,
16 deliberate, and willful attempt to unfairly compete with Plaintiffs.

17   199.   Plaintiffs have been damaged by Defendants' misconduct and are
18 entitled to injunctive relief, actual damages, enhanced damages (including trebling),
19 costs, and reasonable attorneys' fees.

20
21

**COUNT VII**
**Washington Common Law Trademark Infringement and Unfair Competition**

22   200.   Plaintiffs incorporate the preceding paragraphs as if fully set forth
23 herein.

24   201.   Plaintiffs own and enjoy common-law rights in Washington and
25 throughout the United States in Plaintiffs' Marks for use in connection with (among
26 other things) apparel and merchandise which are superior to any rights that

COMPLAINT–54

Defendants may claim in the Infringing Marks in any form or style with respect to the provision and sale of those goods.

202.   Defendants' marketing, promotion, offering for sale, and sale of goods under the Infringing Marks constitute trademark infringement and unfair competition under the common law of the State of Washington.

203.   Defendants' use of the Infringing Marks is a knowing, willful, and intentional violation of Plaintiffs' common law rights, demonstrating a bad-faith intent to trade on the goodwill associated with Plaintiffs and Plaintiffs' Marks.

204.   Defendants' actions, if not restrained, will cause irreparable injury to Plaintiffs. In addition, Defendants' actions will cause Plaintiffs to lose income, profits, and goodwill while Defendants acquire income profits, and goodwill. This infringement diminishes the value of Plaintiffs' Marks, goodwill, and reputations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court:

A.   Enter a judgment that Defendants are liable to Plaintiffs for infringement, counterfeiting, and false designation of origin under 15 U.S.C. §§ 1114(1) and 1125(a);

B.   Enter a judgment that Defendants are liable to Plaintiffs for dilution under 15 U.S.C. § 1125(c);

C.   Enter a judgment that Defendants are liable for violating Washington state law by engaging in trademark dilution, unfair and deceptive trade practices, common law trademark infringement, and unfair competition;

D.   Enter a preliminary and permanent injunction enjoining Defendants and their agents, representatives, employees, assigns, and all persons acting in concert or privity with them, from maintaining, disseminating, reproducing, promoting, distributing or otherwise using the Infringing Marks or any marks confusingly

COMPLAINT–55

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

similar to Plaintiffs' Marks, as all or part of any mark, product, product packaging, configuration, or design;

E.      Enter a preliminary and permanent injunction enjoining Defendants and their agents, representatives, employees, assigns, and all persons acting in concert or privity with them, from doing any act or thing likely to induce the mistaken belief that Defendants and/or Defendants' goods are in any way affiliated, connected or associated with Plaintiffs or their goods, or from doing any other act or thing likely to cause confusion with respect to Plaintiffs' Marks;

F.      Enter a judgment that Defendants' trademark infringement, false designation of origin, dilution, deceptive trade practices, and unfair competition are and have been willful;

G.      Order Defendants to deliver to Plaintiffs or to the Court for destruction all materials bearing the Infringing Marks;

H.      Order Defendants to provide an accounting of all income derived from Defendants' sale and distribution of products bearing the Plaintiffs' Marks or similar variations thereof from the first such sale to present;

I.      Order Defendants to file and serve a report in writing, and under oath, setting forth the manner and form in which they have complied with the Court's order and injunction;

J.      Order Defendants to pay Plaintiffs any damages attributable to Defendants' infringement, false designation of origin, dilution, deceptive trade practices, and unfair competition to account for all gains, profits, and advantages derived therefrom, and such damages authorized by law;

K.      Enter an order awarding Plaintiffs their actual damages and/or Defendants' profits, trebled, or, in the alternative, awarding Plaintiffs statutory damages pursuant to 15 U.S.C. § 1117(c);

COMPLAINT–56

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

L.      Enter an order pursuant to 15 U.S.C. § 1116(d)(1)(A) impounding all counterfeit and infringing merchandise and materials bearing any of the Infringing Marks;

M.      Declare this to be an exceptional case;

N.      Order Defendants to pay Plaintiffs their attorneys' fees;

O.      Award Plaintiffs their costs, pre-judgment interest, and post-judgment interest; and

P.      Award Plaintiffs such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial for all issues so triable.

COMPLAINT–57

1

Dated:  April 7, 2021          Respectfully submitted,

2

By:  /s/ Javier F. Garcia

3

Javier F. Garcia
Washington Bar No. 38259

4

JGarcia@perkinscoie.com
PERKINS COIE LLP

5

1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099

6

Phone: (206) 359-8000

7

Stephen F. English
(to be admitted pro hac vice)

8

SEnglish@perkinscoie.com
PERKINS COIE LLP

9

1120 NW Couch Street, 10th Floor
Portland, Oregon 97209

10

Phone: (503) 727-2000

11

Thomas L. Holt
(to be admitted pro hac vice)

12

THolt@perkinscoie.com
Jeremy L. Buxbaum

13

(to be admitted pro hac vice)
JBuxbaum@perkinscoie.com

14

PERKINS COIE LLP
131 South Dearborn Street, Suite No. 1700

15

Chicago, Illinois 60603
Phone: (312) 324-8400

16

*Attorneys for Plaintiffs The Arizona Board*

17

*of Regents on Behalf of The University of*
*Arizona and Arizona State University, The*

18

*Regents of The University of California on*
*Behalf of University of California, Berkeley*
*and University of California, Los Angeles,*

19

*The Regents of The University of Colorado*
*on Behalf of The University of Colorado*

20

*Boulder, University of Oregon, Oregon*
*State University, The University of*

21

*Southern California, The Board of Trustees*
*of The Leland Stanford Jr. University,*

22

*University of Utah, University of*
*Washington, and Washington State*

23

*University*

24

25

26

COMPLAINT–58

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

S. Annie Allison
Washington Bar No. 48397
annie.allison@haynesboone.com
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Phone: (212) 835-4858

David Clark
(to be admitted pro hac vice)
david.clark@haynesboone.com
HAYNES AND BOONE, LLP 600
Anton Blvd., Suite 700
Costa Mesa, CA 92626
Phone: (949) 202-3086

*Attorneys for University of Southern California*

COMPLAINT–59

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000